Robert E. BRESCIANI; Annette Bresciani; Shannon Minnerly and Melanie Minnerly, minor children, by and through their next friends, Robert E. Bresciani and Annette Bresciani, Plaintiffs–Appellees,

v.

William HARAGAN, Deputy with El Paso County Sheriff's Department; Les Milligan, Deputy with El Paso County Sheriff's Department; and Jim Catazaro, Deputy with El Paso County Sheriff's Department, Defendants–Appellants.

No. 97CA0806.

Colorado Court of Appeals, Div. II.

Oct. 15, 1998.

Dana P. Hlavac, P.C., Dana P. Hlavac, Colorado Springs; LeHouillier & Associates, Patric J. LeHouillier, Colorado Springs, for Plaintiffs–Appellees.

Vaughan & DeMuro, Gordon L. Vaughan, Shelby Felton–Schnack, Colorado Springs, for Defendants–Appellants.

Opinion by Judge BRIGGS.

Defendants, William Haragan, Les Milligan, and Jim Catazaro, appeal from the trial court's denial of their motion under the Governmental Immunity Act, §24–10–101, et seq., C.R.S.1998 (the Act), to dismiss certain claims brought by plaintiffs Robert E. Bresciani and Annette Bresciani, and by plaintiffs Shannon Minnerly and Melanie Minnerly, by and through their next friends, Robert E. Bresciani and Annette Bresciani. We affirm.

This action arose out of the manner in which defendants, all officers in the El Paso County Sheriff's Department, executed a search warrant at plaintiffs' residence. Plaintiffs alleged that defendants, in searching the residence, caused excessive and unnecessary damage to the premises and their personal property.

As pertinent here, defendants moved to dismiss all claims on behalf of plaintiffs Annette Bresciani, Shannon Minnerly, and Melanie Minnerly, as well as the tort claims of all plaintiffs. Defendants asserted that plaintiffs had failed to comply with the requirements of §24–10–109(2), C.R.S.1998, which specifies the form and content for a notice of claim.

Following an evidentiary hearing, conducted pursuant to C.R.C.P. 12(b)(1), the trial court concluded that the contents of the notice of claim substantially complied with statutory requirements. It therefore denied the motion to dismiss. In response, defendants filed this appeal.

## I.

As an initial matter, while not raised by the parties, we have an obligation to determine our subject matter jurisdiction over this interlocutory appeal. *See Gordon v. Gray*, 19 Colo. 167, 34 P. 840 (1893); *see also Sorensen v. Farmers Insurance Co.*, 191 Ariz. 464, 957 P.2d 1007 (Ariz.App.1997); *cf. Denver Urban Renewal Authority v. Byrne*, 618 P.2d 1374 (Colo.1980).

Because the parties had not directed their arguments toward that issue, we requested supplemental briefing. The parties filed briefs ostensibly addressing our jurisdiction to hear this appeal, but in fact both parties once again addressed only the merits of defendants' argument that plaintiffs had not sufficiently complied with §24–10–109(2).

Nevertheless, we now conclude that, even though defendants have filed an immediate appeal of an interlocutory order, we have subject matter jurisdiction.

In filing their appeal, defendants relied on §24–10–118(2.5), C.R.S.1998. Under this provision, a trial court's decision on a motion to dismiss based on sovereign immunity is deemed a final judgment subject to interlocutory appeal. Because a challenge to the sufficiency of a notice of claim would appear to raise an issue of "sovereign immunity," *see Trinity Broadcasting v. City of Westminster,* 848 P.2d 916 (Colo.1993), it would further appear that we have jurisdiction. However, when the statutory scheme is considered together with the supreme court's construction of §24–10–109, C.R.S.1998, in two cases raising different issues, the answer to the question of our jurisdiction becomes more difficult.

### A.

Under §24–10–108, C.R.S.1998, with certain exceptions sovereign immunity is a bar "to any action" against a public entity for an injury which lies in tort or could lie in tort. If a public entity or employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court must suspend discovery, except for that discovery necessary to decide the issue of sovereign immunity. The court's decision on the motion is deemed "a final judgment . . . subject to interlocutory appeal."

Section 24–10–109, C.R.S.1998, sets forth the requirements for the notice of claim. Under §24–10–109(1), C.R.S.1998, any person claiming to have suffered an injury caused by a public entity or employee must file a written notice of claim within 180 days after the date of the discovery of the injury. The subsection further provides: "Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article."

The requirements for the content of the notice of claim are specified in §24–10–109(2):

The notice shall contain the following:

(a) The name and address of the claimant and the name and address of his attorney, if any;

(b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of;

(c) The name and address of any public employee involved, if known;

(d) A concise statement of the nature and the extent of the injury claimed to have been suffered;

(e) A statement of the amount of monetary damages that is being requested.

Other subsections of §24–10–109 deal with additional notice requirements and procedures.

Finally, §24–10–118, C.R.S.1998, sets forth the requirements for claims against public employees and the extent of their immunity. Section 24–10–118(2)(a), C.R.S.1998, grants public employees immunity from claims that lie in tort or could lie in tort, unless the public employee's act or omission causing injury was willful and wanton. However, unlike the immunity provided public entities, the immunity is not from suit, but "from liability."

In contrast, §24–10–118(1)(a), C.R.S.1998, provides that, in an action against a public employee, "[c]ompliance with the provisions of §24–10–109, *in the forms* and within all times provided by section 24–10–109, *is a jurisdictional prerequisite.*" (emphasis added) In turn, under §24–10–118(2.5), if a public employee raises the issue of "sovereign immunity" prior to or after the commencement of discovery, the court must suspend discovery, except for that necessary to decide the issue of sovereign immunity. The provision concludes: "The court's decision on such motion shall be a final judgment . . . subject to interlocutory appeal."

### B.

In *City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996), the supreme court recognized the distinction between the two kinds of immunity created by the Governmental Immunity Act. Of importance here is the court's

further discussion of the difference in the right to immediate appeal.

The defendants in *Brace* asserted immunity in their motion for summary judgment on the plaintiffs' contract claims against the public entities and the tort claims against the public employees. The tort claims were premised on allegations that the public employees had engaged in willful and wanton conduct. The trial court denied the motion. It found that there were genuine issues of material fact both as to whether the public entities had breached the contract and as to whether the employees had acted in a manner that was willful and wanton.

The defendants immediately appealed the dismissal of the claims against the public entities. In *Brace v. City of Lakewood,* 899 P.2d 301 (Colo.App.1995), a division of this court dismissed the appeal for lack of subject matter jurisdiction. Defendants sought, and were granted, certiorari review in the supreme court.

In that review, the supreme court first noted that, under both §§24–10–108 and 24–10–118(2.5), the trial court's decision on an issue of "sovereign immunity" was subject to immediate appeal. It then explained, consistent with its earlier holdings in *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995) and *Trinity Broadcasting v. City of Westminster, supra,* that "sovereign immunity" under the Act is a "jurisdictional issue." *City of Lakewood v. Brace, supra,* 919 P.2d at 244. Thus, when a public entity seeks dismissal of a claim under §24–10–108, the trial court must resolve any disputed issues of fact under C.R.C.P. 12(b)(1), which provides for dismissal due to lack of jurisdiction over the subject matter. The trial court's decision is then subject to immediate appeal.

As to the claims against the public employees, the supreme court in *Brace* reached a different conclusion. It contrasted a public entity's immunity from *suit* for certain types of claims under §24–10–108 from a public employee's immunity from *liability* under §24–10–118(2)(a). The court concluded that the immunity from liability provided under §24–10–118(2)(a) was only a "defense," and the question whether the employees' conduct was willful and wanton would have to await

resolution by the trier of fact at the trial on the merits.

The initial question in this case therefore becomes whether defendants' challenge under §24–10–109(2) to the sufficiency of the contents of plaintiffs' notice of claim raises a "jurisdictional issue" of "sovereign immunity." If so, the trial court's decision is clearly subject to immediate appeal, pursuant to §24–10–118(2.5). However, if the motion does not raise a "jurisdictional issue," the right to an immediate appeal becomes less clear.

## C.

The supreme court in *Brace* relied in part on the holding in *Trinity Broadcasting v. City of Westminster, supra,* that the trial court is to act as the factfinder to determine "if the jurisdictional prerequisite notice provisions ... were satisfied." *City of Lakewood v. Brace, supra,* 919 P.2d at 244. It would therefore appear that the notice provision in question here, §24–10–109(2), together with the rest of the notice provisions in §24–10–109, raise "jurisdictional issues" of "sovereign immunity."

However, in *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996), an opinion issued a month before its decision in *Brace,* the supreme court had been asked to determine whether a premature filing of an action, in violation of another notice provision, §24–10–109(6), C.R.S.1998, barred an action against a public entity. Under that provision, no action is to be brought until after a claimant who has filed a timely notice of claim has received notice from the public entity denying the claim or until after ninety days has passed following the filing of the notice of claim.

Based in part on "equitable considerations," the supreme court concluded:

[T]he critical language of [§24–10–109(1) ], that 'compliance with the provisions of this section shall be a jurisdictional prerequisite,' must be interpreted to mean 'the provisions of this [sub]section,' i.e., subsection (1), rather than the entirety of section 24–10–109.

*Regional Transportation District v. Lopez,* *supra,* 916 P.2d at 1192. The court therefore held that the suit was not barred by the failure to comply strictly with the requirements of §24–10–109(6); *see also Jefferson County Health Services Ass'n v. Feeney,* 1998 WL 643968 (Colo. No. 97SC667, September 14, 1998) (Martinez, J., concurring).

More recently, in *Brock v. Nyland,* 955 P.2d 1037 (Colo.1998), the supreme court was asked to decide whether the filing of a notice of claim with the claims department of the Regional Transportation District (RTD) complied with §24–10–109(3), C.R.S.1998. That provision requires that the notice of claim must be filed "with the governing body of the public entity or the attorney representing the public entity." Because §24–10–109(3) was specific and unambiguous, the majority of the court, in two concurring opinions, held that the plaintiff's action was barred.

Of importance here, both the concurring opinions in *Brock,* as well as the dissenting opinion, reaffirmed and relied on the conclusion reached in *Lopez.* The reference in §24–10–109(1) to the provisions of this "section" was "a drafting error" that must be interpreted to mean "the provisions of this [sub]section, i.e., subsection (1), rather than the entirety of section 24–10–109." *Brock v. Nyland, supra,* 955 P.2d at 1042.

Thus, the supreme court has twice concluded that, except for §24–10–109(1), compliance with the provisions of §24–10–109 is *not* a "jurisdictional prerequisite." It could therefore be argued that the asserted failure to comply with §24–10–109(2) does not raise a "jurisdictional issue." Hence, it could be further argued that the challenge to the sufficiency of the contents of a notice of claim does not raise an issue of "sovereign immunity" and, thus, a trial court's rejection of that challenge is not subject to immediate appeal pursuant to §24–10–118(2.5). For several reasons, we conclude to the contrary.

### D.

Initially, we note that in neither *Brock* nor *Lopez* did the supreme court address whether a trial court's determination concerning a challenge to a notice of claim was subject to immediate appeal. *Brock* involved the question how strictly §24–10–109(3) should be construed in determining a claimant's compliance, while the question in *Lopez* was how strictly §24–10–109(6) should be construed for the same purpose. The discussion of "jurisdiction" was in fact unnecessary to either opinion. *See Brock v. Nyland, supra,* 955 P.2d at 1045 (Kourlis, J., concurring)("What constitutes compliance turns on the language and intent of the provision, not the jurisdictional or non-jurisdictional import of the provision.").

Further, the court in *Lopez* interpreted the reference in §24–10–109 to "section" to mean "subsection" at least in part for equitable reasons. The court sought to avoid dismissing outright an otherwise valid action merely because it had been filed prematurely. This does not indicate the supreme court separately intended to imply that public entities and employees must proceed through trial before being able to challenge an assertedly deficient notice of claim on appeal.

Indeed, the notice issue addressed by the supreme court in *Brock* had been raised by RTD through *an immediate appeal to this court.* This approach is consistent with one of the basic purposes of the Act: to shield public entities and employees from being forced to trial or exposed to the other burdens of extended litigation, when the viability of the proceedings is dependent on the resolution of an essentially legal question. *See City of Lakewood v. Brace, supra; see also Trinity Broadcasting v. City of Westminster, supra.*

In addition, in neither *Brock* nor *Lopez* did the supreme court consider the language in §24–10–118(1)(a). As earlier noted, it provides that, at least in actions against public employees, "compliance with the provisions of section 24–10–109, *in the forms* and within the times provided by section 24–10–109, shall be a *jurisdictional prerequisite* ...." (emphasis added) This provision clearly refers to all of §24–10–109, not just §24–10–109(1), and, equally important, it expressly makes a challenge to the "form" of the notice of claim a "jurisdictional issue."

Moreover, the supreme court's treatment of "jurisdictional issues" as issues of "sovereign immunity" in *Brock* and *Lopez* does not necessarily imply that it would treat *only* issues that are "jurisdictional" in the ordinary sense of the word as issues of "sovereign immunity" that are subject to immediate. appeal under §24–10–118(2.5). Such a conclusion would appear contrary to the statutory scheme. For example, §24–10–118(2.5), which involves the determination whether a public employee's conduct was willful and wanton, is the *only* provision that expressly limits its grant of immunity to immunity from "liability" rather than immunity from "suit." This is likewise the *only* provision that the supreme court has concluded provides a mere "defense." *See City of Lakewood v. Brace, supra.*

In requiring appeal after trial of this single immunity determination, the General Assembly and supreme court have recognized that in most cases the determination whether a public employee engaged in willful and wanton conduct is the very factual issue upon which the employee's liability ultimately turns. This issue, unlike others such as notice of claim, is not ordinarily "susceptible to resolution at an early stage in the litigation process before significant discovery has been undertaken." *City of Lakewood v. Brace, supra,* 919 P.2d at 246. Further, when there is a genuine factual issue as to whether the public employee's conduct was willful and wanton, the Act is not undermined by subjecting the employee to the burdens of a trial on this single issue before permitting an appeal.

In contrast, the question whether the contents of a notice of claim sufficiently comply with the requirements of §24–10–109(2) typically involves undisputed facts, as in this case. Even when facts are disputed, they are separate from those determinative of liability and can be resolved early in the litigation process, without significant discovery. Equally important, subjecting a public entity or employee, or a plaintiff for that matter, to a meaningless trial when a notice of claim is deficient undermines a basic goal of the Act.

Nor does the issue have to be "jurisdictional" in order to be subject to immediate appeal as a "final judgment." While the trial court's order is clearly interlocutory, "the General Assembly does not consider 'final judgment' and 'interlocutory order' to be mutually exclusive terms.... Consequently, a statute's description of an order as 'interlocutory' ... does not necessarily preclude an immediate appeal of [an] order as a final judgment." *Industrial Claim Appeals Office v. Orth,* 965 P.2d 1246, 1252–1253 (Colo.1998) (citing as an example §24–10–108, which uses language identical to §24–10–118(2.5) in making the trial court's ruling a "final judgment" subject to "interlocutory" appeal).

Finally, we are not persuaded to accept the alternative suggestion that the issue of the sufficiency of a notice of claim is one of sovereign immunity if asserted by a public entity, but not if asserted by the public employee. Such a construction of the statutory scheme would not only ignore the considerations just discussed, it would lead to further anomalous results.

For example, the public entity could immediately appeal a trial court's ruling that the contents of a notice of claim were sufficient, while the plaintiff and public employee would have to proceed through trial. Thus, the plaintiff would be forced to proceed simultaneously with the trial and the appellate proceedings. Furthermore, if the trial court's decision were reversed on appeal, the plaintiff and the public employee, but not the public entity, would have been forced to proceed through meaningless pre-trial and trial proceedings. Even if the decision were affirmed on appeal, the plaintiff would then be forced to proceed through a second trial against the public entity, in which the issues would be virtually identical to those involved in the first trial against the public employee.

For these reasons we conclude that, despite the supreme court's dicta in *Lopez* and *Brock* that treat only §24–10–109(1) as a "jurisdictional prerequisite," a challenge to the contents of a notice of claim raises an issue of "sovereign immunity" for purposes of §24–10–118(2.5). Hence, the trial court's ruling in this case was a "final judgment ... subject to interlocutory appeal." We there-

fore turn to the merits of defendants' argument.

## II.

■ Defendants contend that, because plaintiffs' notice of claim did not specifically identify any plaintiff except Robert Bresciani and did not specifically assert that defendants' actions in conducting the search were willful and wanton, the notice was deficient. We disagree.

## A.

■ As an initial matter, we must determine our standard of review. In doing so, we recognize that, as to questions of sovereign immunity, the trial court reviews the motion to dismiss under C.R.C.P 12(b)(1) and, thus, resolves disputed issues of fact. We are to review those findings of fact under the "clearly erroneous" standard of review, which is "highly deferential." *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra,* 848 P.2d at 925.

However, in this case the underlying facts are not in dispute. The only question is whether the notice of claim sufficiently complied with the requirements of §24–10–109(2).

■ The standard of review in determining the sufficiency of compliance is not mentioned in *Lopez* or *Brock.* Nevertheless, in both cases the supreme court treated the question as one of statutory interpretation and apparently conducted review de novo. Further, in *Swieckowski v. City of Fort Collins,* 934 P.2d 1380 (Colo.1997), the supreme court expressly recognized that when the underlying facts are undisputed, the issue is one of law, and an appellate court is not bound by the district court's determinations. *See also Johnson v. Regional Transportation District,* 916 P.2d 619 (Colo.App.1995). We therefore conclude the question presented is one of law, which we are to review de novo.

## B.

■ As earlier noted, a claimant must strictly comply with the 180–day requirement in §24–10–109. *Regional Transportation District v. Lopez, supra.* However, substantial compliance with the requirements for the contents of the notice under §24–10–109(2) is sufficient. *Woodsmall v. Regional Transportation District,* 800 P.2d 63 (Colo.1990); *Cassidy v. Reider,* 851 P.2d 286 (Colo.App. 1993).

■ The notice requirements are intended to allow the public entity to conduct a prompt investigation of the claim, to remedy any problem, and to make adequate fiscal arrangements to meet any potential liability. *Woodsmall v. Regional Transportation District, supra.* The more general remedial purpose of the Government Immunity Act is to provide compensation to persons injured by public entities and employees. *State v. Moldovan,* 842 P.2d 220 (Colo.1992).

Here, the notice of claim stated in pertinent part that: "Mr. Bresciani's home and property were unnecessarily damaged and destroyed during a search" by defendants; defendants "caused extensive unnecessary damage to Mr. Bresciani's and his family's home and property"; "Mr. Bresciani and his family have suffered a violation of their civil liberties and extensive damage to their home and property"; and "Mr. Bresciani and his family are now considering filing a civil rights action."

We recognize that, under the section captioned "Name and address of Claimant," only Robert Bresciani's name and address are listed, and that the notice does not specifically reference willful and wanton conduct. The notice nevertheless gave the public entity the information necessary to conduct an investigation, to remedy any problem, and to make adequate fiscal arrangements to meet any potential liability arising from damage to property in the home by defendants.

In particular, the reference in plaintiffs' notice of claim to "family" was sufficient notice to include any potential liability, not just to plaintiff Robert Bresciani personally, but also, at the least, his immediate family residing with him. And, by asserting that defendants had damaged and destroyed the residence unnecessarily, sufficient notice was given that the damage may have been caused by willful and wanton conduct. *See Moody v. Ungerer,* 885 P.2d 200 (Colo.1994)(willful and

wanton conduct involves actions that are done heedlessly and recklessly, without regard to consequences, or the rights or safety of others).

Defendants point out that plaintiffs stated in discovery responses that some of the damaged property was owned by one of the plaintiffs' parents, who did not reside in the house. However, the parents are not named plaintiffs. Hence, the question raised as to their property is not whether the notice was sufficient. Rather, it is whether any named plaintiff can recover damages for the destruction of the parents' property. That issue is not before us.

Finally, we conclude the cases relied on by defendants, *Smith v. Winter,* 934 P.2d 885 (Colo.App.1997) and *Conde v. Colorado State Department of Personnel,* 872 P.2d 1381 (Colo.App.1994), do not require reversal, even if we were to concur in their holdings. In *Smith,* a division of this court concluded that a wife's claim for loss of consortium required a separate written notice of claim. In *Conde,* the division dismissed a "whistle-blower" claim, to the extent it relied on claims of harassment and failure to promote, because the notice had not included any reference to such facts.

Unlike the notices in *Smith* and *Conde,* the notice here sufficiently identified plaintiffs and their address and included a concise statement of the factual basis for the claims in question. We therefore conclude, as did the trial court, that plaintiffs substantially complied with the notice of claim requirements of §24–10–109.

The order is affirmed.

NEY, J., concurs.

CRISWELL, J., dissents.

**Judge CRISWELL dissenting.**

I am convinced that an action against a public employee under §24–10–118(1), C.R.S. 1998, based upon that employee's alleged "willful and wanton" act or omission, does not give rise to a question of sovereign immunity under §24–10–118(2.5), C.R.S.1998. Hence, I respectfully dissent from the majority's de- ·

termination that we have jurisdiction over the present appeal.

Two sections of the Governmental Immunity Act (GIA), §§24–10–105 and 24–10–118, C.R.S.1998, describe a public employee's immunity with respect to actions for injuries caused by that employee's acts or omissions. Neither of them has been the subject of extended consideration by the supreme court.

Section 24–10–105 provides, simply, that no public employee shall be liable for injuries arising out of an act or omission during the performance and within the scope of his duties, except as otherwise provided in the GIA, "*unless* such act was willful and wanton." (emphasis supplied) It also provides that no action may be brought against a public employee, "except in compliance with the requirements" of the GIA.

Section 24–10–118, then, is the statute that sets forth the "requirements" referred to by §24–10–105. Section 24–10–118(1) provides that "*any* action brought against a public employee" that lies in tort or could lie in tort, based upon an act or omission of that employee that is alleged to have occurred within the course and scope of his or her employment, "shall be subject to the . . . requirements and limitations" set forth in the remainder of §24–10–118, "*unless* the act or omission causing such injury was willful and wanton . . . ." (emphasis supplied)

On its face, then, if an action falls within the latter category, §24–10–118(1) does not require compliance with the remainder of that statute. Indeed, prior to the 1992 amendment to §24–10–118(1)(a), C.R.S.1998, *see* Colo. Sess. Laws 1992, ch. 172 at 1119, there was *no* requirement that any notice be given before commencing an action based upon an employee's willful and wanton actions. *Pacino v. Sanchez,* 807 P.2d 1231 (Colo.App.1990).

However, §24–10–118(1)(a) now provides that in any action referred to in §24–10–118(1), there must be compliance with the notice provisions of §24–10–109, C.R.S.1998, as a "jurisdictional prerequisite to suit," and that this notice is "required," whether or not the claim is based upon an employee's willful

and wanton act. The remaining requirements of §24–10–118 are not applicable to the issue presented here.

Section 24–10–118(2)(a), C.R.S.1998, provides that a public employee "shall be immune from liability" for an act arising out of his duties, except in two circumstances, as follows:

> "no immunity may be asserted in an action for injuries resulting from the circumstances specified" in §24–10–106(1), C.R.S.1998, which is the statute that describes the various circumstances in which a public entity may be sued, *and*

> in those instances in which "the act or omission causing such injury was willful and wanton."

Finally, §24–10–118(2.5) provides that "[i]f a public employee raises the issue of *sovereign immunity*" prior to trial, the court's decision on that issue "shall be a final judgment and shall be subject to interlocutory appeal." (emphasis supplied)

I do not suggest that these statutes are models for future legislative drafting. Indeed, the first proviso referred to in §24–10–118(2)(a) appears to be inconsistent with the immunity granted to employees by §24–10–105. Nevertheless, I am convinced that the intent reflected in the GIA was to create not one, but two, types of immunity for the benefit of public employees.

First, the employee has general immunity from suit for acts or omissions undertaken within the course and scope of employment, except under those circumstances described in §24–10–106(1) in which the public entity's immunity is also waived. The public entity may ultimately be responsible for payment of any judgment rendered against the employee under such circumstances. *See* §24–10–110, C.R.S.1998. However, it is clear that, if the suit against the employee is of this type, all of the requirements of §24–10–118 must be met, and the providing of notice under §24–10–109 is, like a similar suit against an entity, a "jurisdictional prerequisite." Hence, I am willing to assume that, for purposes of actions of this type against the employee, the immunity granted by the GIA is so akin to "sovereign immunity" that the court's deci-

sion with respect to an immunity issue is immediately appealable under §24–10–118(2.5).

However, the GIA also authorizes an action against a public employee based upon that employee's willful and wanton acts or omissions. And, if the employee has engaged in such acts or omissions, there is *no* immunity whether or not the acts or omissions occurred under the circumstances described in §24–10–106(1). Likewise, none of the "requirements and limitations" of §24–10–118 are applicable to such an action, except where otherwise specifically noted. And, in this respect, while notice under §24–10–109 is now "required" before such an action, the failure of which may "forever bar" that action, the GIA does not make such a notice a "jurisdictional prerequisite" for the assertion of these types of claims.

Hence, the immunity of an employee with respect to an action based upon willful and wanton conduct does not implicate any question of "sovereign immunity"; it involves the employee's "qualified immunity" only. I conclude, therefore, that in an action of this type against a public employee, no issue of "sovereign immunity" is presented, and accordingly, §24–10–118(2.5) does not allow an interlocutory appeal.

As noted, there are few supreme court decisions that are relevant to this question.

In *Trinity Broadcasting of Denver v. City of Westminster,* 848 P.2d 916 (Colo.1993), the action was instituted against the public entity alone; no question relating to an employee's immunity was presented. The same was true in *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996).

Further, in both *Regional Transportation District v. Lopez, supra,* and *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995), the trial court had dismissed plaintiff's complaint, resulting in a final judgment, so that the court had jurisdiction over the cause without reference to any special statute.

Finally, in the most recent case, *Brock v. Nyland,* 955 P.2d 1037 (Colo.1998), while both the entity and an employee were joined as defendants, there is no indication in the opinion that the employee's liability was

based upon some alleged willful or wanton act or omission. On the contrary, the opinion of the division of this court that the supreme court was reviewing, *Nyland v. Brock,* 937 P.2d 806 (Colo.App.1996), indicates that both the individual, who was a bus driver, and the entity were sued under §24–10–106(1)(a), C.R.S.1998, because plaintiff's injuries resulted from the employee's operation of a motor vehicle.

The only opinion that addresses the difference between the immunity granted a public entity and that granted a public employee is *City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996). And, while that opinion does not adopt the specific analysis set forth above, it is generally supportive, in my view, of my conclusions here.

In *Brace,* both a city and two of its managerial employees were sued, the latter in their individual capacities, under both federal and state law. The state law claims asserted against the individuals were based upon their alleged willful, wanton, and retaliatory acts.

The supreme court determined that, when such a claim is asserted, the public employee possesses only a "qualified immunity" under the GIA, which is lost if the employee's actions were willful and wanton. Noting that §24–10–118(2)(a) provides that a public employee "shall be immune from *liability* " (emphasis supplied), and not immunity from suit, it concluded that the qualified immunity granted to an employee under the GIA provides only an affirmative defense to a plaintiff's claim; it does not give rise to a jurisdictional issue.

My reading of that portion of the GIA dealing with the liability of and suits against public employees, in light of the opinion in *Brace,* leads me to conclude that, if the action against the employee allegedly arises from one or more of the circumstances described in §24–10–106(1), the employee's absolute immunity, which derives from the concept of sovereign immunity, is implicated, and any decision with respect thereto is immediately appealable under §24–10–118(2.5).

However, if the allegation is that the employee's actions were willful and wanton, no sovereign immunity issue is presented; only the employee's qualified immunity prevents the employee's liability. And, any pre-trial determination upon this issue does not involve a question of sovereign immunity. In suits of this nature, therefore, there is no right to an interlocutory appeal.

Here, the only basis for the employees' liability is their alleged willful and wanton actions. And, because such allegations present no issue respecting sovereign immunity, I conclude that this court lacks jurisdiction to review the trial court's pre-trial rulings until a final judgment is entered.

For these reasons, I would dismiss this appeal for lack of jurisdiction.