**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DONNA WORLEY,

     Plaintiff - Appellee,

v.

BOARD OF COUNTY
COMMISSIONERS OF PARK
COUNTY, COLORADO; PARK
COUNTY; PARK COUNTY BOARD
OF SOCIAL SERVICES,

     Defendants,

   and

JERRY SOLBERG, individually;
C.L. DELANGE, individually,

     Defendants - Appellants.

No. 01-1360
(D.C. No. 99-D-2474)
(D. Colorado)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendants Jerry Solberg and C.L. DeLange appeal from the district court's order denying their motion to dismiss or for summary judgment as to two claims asserted against them by plaintiff in the underlying civil rights suit. Based on plaintiff's amended complaint, the parties refer to these claims as the "Sixth Claim" and the "Eighth Claim."

*The Sixth Claim - Retaliation.*

Plaintiff, an attorney, provided legal services under two consecutive annual contracts to the Board of County Commissioners for Park County, Colorado, functioning for one year as both County Attorney and as Social Services counsel, and for the next year only as Social Services counsel. Following the Board's decision not to continue her services as County Attorney, plaintiff filed a Notice of Claim regarding potential gender and disability discrimination complaints against the Board and its former members. In addition to discussing the basis for her own possible claims, plaintiff stated that she had observed discriminatory and harassing behavior by unnamed Commissioners and other employees directed towards women, and noted that she had "periodically raised the subject with the

-2-

Commissioners and helped arrange for training for county employees to avoid sexual harassment and gender discrimination claims." Aplt. App. at 78. Shortly after the end of plaintiff's second year under contract with the Board as Social Services counsel, settlement negotiations on plaintiff's discrimination claims failed. The Board advertised for competitive bids for the position plaintiff was still serving, albeit on a month-to-month basis. Despite repeated recommendations from the Department of Social Services Director that the Board offer another contract to plaintiff, and after an interview with defendants in which plaintiff was asked whether her claims created a conflict of interest with her functions as Social Services counsel, the contract for this position was offered to another applicant. After her service to the County was completed, plaintiff filed suit. The Sixth Claim of her Amended Complaint asserts that defendants' decision not to offer another contract to plaintiff for the Social Services counsel position was motivated by "retaliatory wrongful animus and sought to punish [plaintiff] for utilizing state and federally protected means of redressing grievances." Aplt. App. at 34.

In their motion to dismiss or for summary judgment, as to the Sixth Claim, defendants contended that plaintiff's retaliation count failed to state a claim because her Notice of Claim didn't raise an issue of speech on a matter of public concern. Aplt. App. at 47. The district court disagreed, based on plaintiff's

statements about discriminatory behavior towards other women and her prior efforts to bring the issue to the attention of the Board and to arrange for training on sexual harassment for county employees. The court also noted defendants' arguments (more fully briefed in a previous motion to dismiss) that plaintiff's claim should be dismissed because of her status as an attorney to the Board, contending both that her speech was unprotected and that suit against her own client is improper. The court rejected the first argument because plaintiff's duties as Social Services Counsel did not encompass employment discrimination matters. Analogizing plaintiff to in-house counsel, the court also declined to hold that she was precluded from suit for retaliation. Based on these rulings, the court denied defendants' qualified immunity defense.

We have jurisdiction to review the district court's decision denying defendants qualified immunity under the collateral order doctrine. *See Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1199 (10th Cir. 2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). Our review, however, is limited to legal issues underlying the qualified immunity ruling.

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.

*Mitchell*, 472 U.S. at 528.  "We review de novo the denial of a motion based on qualified immunity."  *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). [1]

Qualified immunity protects government officials performing discretionary functions from civil damages liability so long as their challenged conduct did not violate clearly established law of which a reasonable person would have knowledge.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendants properly state the analysis of qualified immunity claims in two parts:  whether plaintiff has alleged the deprivation of a constitutional right, and whether that right was clearly established at the time of the conduct complained of.  *See Tonkovich*, 159 F.3d at 516 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998)) (further citation omitted).

Defendants characterize the issue on the Sixth Claim as whether it was unconstitutional for them to consider potential conflicts in determining whether to offer plaintiff another contract as Social Services counsel.  This view of the issue simply begs the question of motive.  Plaintiff claims their failure to offer her

---

[1]    Both the district court and defendant s refer to a number of bases on which the court's ruling could have been made.  Regardless whether the ruling is pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), or 56(c), however, our review remains de novo and limited to legal issues which underlie the qualified immunity ruling.  *See Archer v. Sanchez*, 933 F.2d 1526, 1529 (10th Cir. 1991) (noting plenary review of the denial of summary judgment on qualified immunity grounds).

another contract was motivated by retaliation for her speech; defendants assert that they did not consider the content of her speech. We believe, as did the district court, that the question for qualified immunity purposes is whether it was unconstitutional for defendants to retaliate against plaintiff for such speech, which sought redress of employee discrimination grievances. *See Archer*, 933 F.2d at 1530 (analyzing qualified immunity where factual issues are intertwined with constitutional claim by looking at facts as alleged by plaintiff, "notwithstanding any credibility disputes with defendants"). Defendants' arguments that plaintiff failed to state a claim because of her status as an independent contractor or based on the attorney-client relationship must await final judgment for appellate consideration. *See Mitchell*, 472 U.S. at 527-28.

Defendants note that allegations of retaliation for redress of grievances by a public employee are analyzed in the same fashion as allegations of retaliation for speech. *See Martin v. City of Del City*, 179 F.3d 882, 886-89 (10th Cir. 1999). Under this part of the applicable test "we must first decide whether the employee's speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Defendants correctly assert that plaintiff's speech, the Notice of Claim, was not a matter of public concern insofar as it alleged her own potential claims of sexual harassment.

-6-

*See David v. City & County of Denver*, 101 F.3d 1344, 1356 & n.2 (10th Cir. 1996). However, they next complain about plaintiff's attempts to "bootstrap" allegations made by other county employees against defendants' predecessors on the Board "into her own speech on matters of public concern." Aplt. Br. at 15. This is exactly the point relied on by the district court. Unlike in *David*, plaintiff here *has alleged* "that other employees have been subjected to harassment" and her reported attempts to provide sexual harassment training for county employees implicates the Board's and County's "performance of its governmental responsibilities." *David*, 101 F.3d at 1356. "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content, clearly concerns matter of public import." *Prager*, 180 F.3d at 1190 (further quotation omitted). We find no fault with the district court's conclusion that plaintiff's speech was a matter of public concern.

Defendants also contend that plaintiff's speech was unprotected in light of her role as counsel to the Board. In determining this issue, we balance plaintiff's right to speak out on issues of public concern with the government's interest in efficient operation. *See id.* at 1191 (citing *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)). Defendants argue that plaintiff's speech was made as part of her duties as a county attorney and refer to unspecified future "disruption" should she be offered another contract for Social Services counsel while pursuing

potential employment discrimination claims against the County. They suggest that those claims could harm plaintiff's effectiveness as an attorney for the County and imply that they make plaintiff a less trustworthy applicant. But "[s]peculative assertions of workplace disruption" are insufficient to overcome plaintiff's first amendment rights. *Id.* Further, defendants' arguments wholly ignore the district court's statement that the record contains no evidence either that plaintiff's work as Social Services attorney would be affected by her claims or that her complaints of discrimination were made as part of her official duties. We note that the record is likewise devoid of evidence that plaintiff had "access to [her] employer's confidences," acted as a spokesperson for the Board or other county employees, or was in a policy-making position, as defendants' arguments suggest. *See* Aplt. Br. at 16. We perceive no legal error in the district court's ruling that plaintiff's speech was protected.

*The Eighth Claim - Wrongful Refusal to Contract under Colorado law.*

Plaintiff asserted a claim that defendants' conduct in failing to offer her a contract for the Social Services counsel position was in violation of Colorado public policy. Defendants responded that they were immune on this claim under the Colorado Governmental Immunity Act (CGIA). Noting that plaintiff's complaint alleged willful and wanton conduct by defendants, the district court

ruled that genuine issues of material fact precluded summary judgment on this claim. Aplt. App. at 260.

Generally speaking, such a conclusion would preclude an appeal on this issue. *See Malik v. Arapahoe County Dep't of Soc. Servs.*, 191 F.3d 1306, 1314 (10th Cir. 1999). However, defendants make a legal argument on appeal; one presented to the district court, but not addressed. As a legal argument underlying their claim of immunity, we address its merits on appeal. *See Cruz v. City of Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001) (limiting interlocutory appeal on qualified immunity to "purely legal" challenges).

Defendant s contend that, despite plaintiff's allegation of willful and wanton behavior, they have immunity under the CGIA because her claim must also assert a tort recognized by Colorado. "There is no such free-standing claim as 'willful and wanton' conduct." Aplt. Br. at 19. We reject this argument. Neither the statutory language of Colorado's immunity act nor Colorado case law suggest that identification of a recognized tort is a prerequisite to the state's voluntary waiver of sovereign immunity.

> Any action against a public employee . . . which lies in tort or could lie in tort . . . and which arises out of injuries sustained from an act or omission of such employee which occurred or is alleged in the complaint to have occurred during the performance of his duties and within the scope of his employment, *unless the act or omission causing such injury was willful and wanton,* shall be subject to the following requirements and limitations.

Colo. Rev. Stat. § 24-10-118(1). The language "which lies in tort or *could lie in tort*" does not, on its face, appear to limit a plaintiff to recognized torts. So long as plaintiff's allegations allege a tort or conduct which could lie in tort and also facts specific enough to establish willful and wanton conduct, they will survive summary judgment and suffice to preclude immunity under the CGIA at this stage of the proceedings. [2] "'A well-pled complaint that an employee acted willfully and wantonly must await determination at trial on the merits.'" *Scott v. Hern*, 216 F.3d 897, 916 (10th Cir. 2000) (quoting *City of Lakewood v. Brace*, 919 P.2d 231, 246 (Colo. 1996) (en banc)).

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge

---

[2] Colorado case law acknowledges that this provision is an immunity from liability, not from suit. *See Bresciani v. Haragan*, 968 P.2d 153, 156 (Colo. Ct. App. 1998).